IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| James R. Jones, | ) | C/A No. 4:05-2424-CMC-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| State of South Carolina; and Henry | ) | |
| McMaster, Attorney General of the State | ) | |
| of South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, James R. Jones ("petitioner/Jones"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on August 30, 2005. Respondents filed a motion for summary judgment on November 2, 2005, along with a return and supporting memorandum. The undersigned issued an order filed November 4, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response to Respondents' motion for summary judgment on November 28, 2005.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## I. PROCEDURAL HISTORY

The procedural history as set forth by the Respondents in their memorandum has not been seriously disputed by the Petitioner. Therefore, the undersigned will set out the undisputed procedural history as set forth by the Respondents.

Petitioner is presently confined by the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Spartanburg County. The situation before the Court in this habeas action results from federal and state convictions surrounding a multi-state burglary ring in which Petitioner was a central figure. At the February 1992 term, the Spartanburg County Grand Jury indicted Petitioner for two charges of armed robbery, safecracking, first degree burglary, and five (5) charges of kidnapping (92-GS-42-1520 to -1528). [PCR App. 171-197]. At the April 1992 term, Petitioner was indicted by the Spartanburg County Grand Jury for criminal conspiracy (92-GS-42-1858). [PCR App. 198-200]. These indictments center around an incident in which Petitioner and accomplices came to South Carolina to burglarize the home of a Mr. and Mrs. Strange, during which Strange family members kept repeatedly showing up one at a time until Petitioner and his confederates had kidnapped and restrained five (5) of them at the home. [PCR App. 16-24].

Prior to resolution of these South Carolina charges, Petitioner was convicted after trial in the United States District Court for the Middle District of Tennessee of four (4) crimes including credit card fraud, interstate transportation of stolen property, and possession of stolen property. Apparently, some of the stolen property transported and possessed by Petitioner was property gained from the incident in South Carolina at the Strange's house. Petitioner received seventy-one (71) months in federal prison for these charges by United States District Judge Thomas A. Wiseman, Jr. on May 11,

1992. [PCR App. 27; PCR Supp. App. 48-49].

Subsequently, Petitioner pleaded guilty to all charges at a hearing before the Honorable J. Derham Cole on June 1, 1992. Petitioner was represented for the South Carolina charges by Billy Hahs, Esquire. Pursuant to a plea agreement, Petitioner would be available to testify against his codefendants, and in return the State would recommend concurrent sentences of life on the first degree burglary charge, life on the safecracking, thirty (30) years each on the kidnapping counts, twenty-five (25) years on the armed robbery charges, and five (5) years for criminal conspiracy. The state prosecution also agreed to recommend Petitioner's state sentences to begin running concurrently with the federal prison time Petitioner received from Judge Wiseman on May 11, 1992. Sentencing on the safecracking charge was to be held over until after the trial of a codefendant. [PCR App. 12-13]. Consequently, on June 1, 1992, Judge Cole sentenced Petitioner consistently with the plea recommendation on all but the safecracking charge.[PCR App. 37-38]. Petitioner received his life sentence on the safecracking charge from Judge Cole at a hearing on September 2, 1992. [PCR App. 193].

Petitioner did not file a direct appeal from his convictions and sentences from South Carolina.

Petitioner attempted an escape prior to his first federal trial. (Petitioner's response, p. 1). At a hearing in the United States District Court for the Middle District of Tennessee on July 15, 1993, and before the Honorable Robert L. Echols, Petitioner was sentenced to an additional forty-eight (48) months for attempted escape. [PCR Supp. App. 67-68].

Petitioner did not file an Application for Post-Conviction Relief ("APCR") until August 15, 2000, some eight years after his plea hearing (00-CP-42-2252). In his Application, Petitioner raised

the following claims:

(1) State charges, counsel had viable defense, he told the court at sentencing "we have an unusual form of double jeopardy", but would not follow up, as court record will show defense. Counsel did nothing at all, also if unwarrant search thrown out, poison true doctrine would have done away with all physical evidence.

(2) Court failed to address me in open court as required under Rule 11(c). All states have a rule of criminal procedure that substantially mirrors that of Fed. R.Crim. P. 11(c).

(3) The court's failure to advise a defendant of his right to appeal constitutes error per se that requires to vacate sentence and remand for resentencing.

(4) Court was without jurisdiction to sentence applicant knowing that he entered his plea on the expressed promise that he would receive no additional time.

(5) Whether Jones was denied effective assistance of counsel when defense counsel conducted no investigation and filed no pre-trial motions.

(6) Whether the plea entered by Jones was involuntary as a result of promises by defense counsel that Jones would serve no additional time in prison.

(7) Whether the guilty plea was not entered knowingly, intelligently and voluntarily because the Court failed to address Jones in open court, as required under Rule 11(c).

(8) Whether the Court's failure to advise Jones of his right to appeal requires a remand on resentencing. [PCR App. 40]. The State filed a Return and Motion to Dismiss on September 23, 2003, in which it asserted a limitations defense. [PCR App. 51].

A hearing was held on the State's limitations defense before the Honorable Donald Beatty. Based on a January 18, 2000, letter of South Carolina Department of Corrections' official Debbie Rowe, informing Petitioner upon his inquiry that he would be transported to South Carolina to serve his life sentence after completing his federal time, Judge Beatty denied the State's motion to dismiss. [PCR App. 56; PCR Supp. App. 87].

Consequently, an evidentiary hearing in Petitioner's APCR was held before the Honorable J. Michael Baxley on September 2, 2003. Petitioner was present and represented by C. Kevin Miller, Esquire; the state was represented by Assistant Attorney General Douglas Leadbitter. Petitioner called himself to testify at the hearing; trial counsel Hahs's testimony was subsequently taken by telephone deposition. [PCR App. 61; 121]. On November 24, 2003, Judge Baxley filed his Order of Dismissal with Prejudice in which he rejected Petitioner's claims for relief. [PCR App. 165].

On December 4, 2003, timely notice of appeal was filed with the South Carolina Supreme Court from Judge Baxley's Order of Dismissal. Aileen P. Clare, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his PCR appeal. On April 26, 2004, Clare filed a "no merit" Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which she raised the following issue on behalf of Petitioner:

> Were petitioner's guilty pleas involuntarily and unknowingly entered, when he believed that he would be discharged from custody after his concurrent prior federal sentence was complete.

The State filed a letter return to the "no merit" petition on April 28, 2004. Petitioner filed his own *pro se* document, in which he raised the following grounds:

(1)     Pro se Argument Double Jeopardy;

(2)     Pro se Involuntary Plea.

The state supreme court denied certiorari by order dated March 16, 2005, and the Remittitur was sent down on April 1, 2005.

## II. GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, Petitioner raises the following grounds:

5

| | |
|---|---|
| GROUND ONE: | Double jeopardy, there for lack of Subject Matter Jurisdiction. |
| FACTS: | May 1992 Federal Judge Wiseman enhanced federal sentence, "amount stolen goods" from South Carolina robbery and "firearm" used in South Carolina robbery, arrest warrants had been served but had not been tried in S.C. |
| GROUND TWO: | Ineffective Assistance of Counsel. |
| FACTS: | Records will show defense counsel did absolutely nothing, did not even file for disclosure, filed nothing at all on my behalf. He was aware of A. Above. |
| GROUND THREE: | Involuntary plea, plea not entered knowingly. |
| FACTS: | I was assured by Defense Counsel I would not return to South Carolina when released from federal custody. Federal presentence investigation report for July 15, 1993 records same thing counsel told me, reference paragraph 80. |
| GROUND FOUR: | Failure to advise right to appeal. |
| FACTS: | On 2 Sept. 1992, sentencing Judge J. Derham Cole stated that second sentencing "would not held up" and did not bother asking me the questions or advising right to Appeal as court record will show if "they" can be made to produce it. |

(Petition).

### III. SUMMARY JUDGMENT

On November 2, 2005, the Respondents filed a return and memorandum of law in support of their motion for summary judgment. Petitioner filed a response in opposition.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function

6

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

       The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

7

## IV.  STANDARD OF REVIEW

Since Jones filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review.").  Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V.  DISCUSSION AS TO STATUTE OF LIMITATIONS

The Respondents assert that the Petitioner's claims must be dismissed as untimely. Specifically, Respondents assert that the Petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondents argue as follows, quoted verbatim:

> Since Petitioner did not file a direct appeal, his conviction was finalized by the conclusion of direct review on June 11, 1992, or ten (10) days after her sentence was given by Judge Cole. Rule 203(b)(2), SCACR (ten day time requirement for filing a notice of appeal from a criminal conviction); Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001) (conviction from which the petitioner filed no direct appeal became final upon expiration of time for seeking direct review). Because Petitioner did not file a direct appeal, the ninety (90) day period for seeking certiorari from the United States Supreme Court is not included. See, e.g. Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000) (direct review concludes at expiration of time for seeking certiorari from United States Supreme Court);28 U.S.C. §1257 (United States Supreme Court can only review on certiorari the final judgments of "highest court of a state"); U.S. Sup. Ct. R. 10(b) (certiorari considered where "state court of last resort" has decided important federal question); U.S. Sup. Ct. R. 13 (time period for petition for writ of certiorari is 90 days from decision or judgment of state court of last resort); Rule 203(b)(2), SCACR (10 day requirement for filing of Notice of Appeal from criminal conviction).
>
> Since Petitioner's conviction became final before the enactment of the AEDPA on April 24, 1996, he had until April 24, 1997, to file his federal habeas corpus action unless the period was at any time tolled. See, e.g. Hernandez v. Caldwell, 225 F.3d 435 (4th Cir. 2000); Harris, *supra*; Brown v. Angelone, 150 F.3d 370 (4th Cir. 1998). Petitioner did not file his APCR until August 15th, 2000, so one thousand five hundred and seventy-four (1574) days of non-tolled

9

>   time ran since the period of limitations began on April 24th, 1996. The period of limitations was tolled during the pendency of the APCR until April 1st, 2005, when the South Carolina Supreme Court issued the remittitur following the denial of certiorari in the APCR appeal. See, e.g. Ott v. Johnson, 192 F.3d 510 (5th Cir. 1999) (tolling does not include 90 days for United States Supreme Court certiorari petition from final denial by state's highest court of collateral action); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000) (running clock from when state appellate court denied leave to appeal denial of state post-conviction petition). Petitioner's delivery date is July 14th, 2005, or one hundred and four (104) days after the disposition of his APCR. Thus, adding the two time periods, there were at least one thousand six hundred and seventy-eight (1678) days of non-tolled time since Petitioner's period of limitations began to run on April 25th, 1996. This represents over four and a half years. Therefore, the present Petition for Writ of Habeas Corpus is time-barred and should be denied and dismissed. See Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000) (where petitioner's direct review concluded in 1992, and petitioner did not file for PCR until ten and-one-half months after AEDPA's effective date of April 24th, 1996, then the ten-and one-half months counted against his period of limitations, which expired one-and-one-half months after his PCR was finally concluded in January 1998).

(Doc. # 11, p. 7-9).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[2] Subsection (d) of the statute now reads:

>   (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the

---

[2] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. Duarte v. Hershberger, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

>    latest of–
>
>    >    (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>    >
>    >    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>    >
>    >    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>    >
>    >    (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>    (2)  The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

For convictions that became final before the AEDPA's effective date, the limitations period began on April 24, 1996. See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000); Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998). The period therefore expires on April 24, 1997 (absent tolling). See Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

As previously stated, Petitioner did not file a direct appeal. Thus, his conviction became final by the conclusion of direct review on June 11, 1992, ten (10) days after he was sentenced. The AEDPA was enacted on April 24, 1996, and petitioner had until April 24, 1997, to file his habeas petition. Petitioner did not file his federal habeas petition until July 14, 2005, Houston v. Lack

delivery date. Therefore, the habeas petition would be barred by the statute of limitations.

In the alternative, if one were to look to any tolling times, the petition is still barred by the statute of limitations. Petitioner filed his PCR application on August 15, 2000, which would suspend the running of the one-year limitation period. 28 U.S.C. §2244(d)(2). Thus, approximately one thousand and seventy-four (1574) days of non-tolled time ran since the period of limitations began on April 24, 1996. The South Carolina Supreme Court issued the Remittitur on April 1, 2005, following denial of the petition for writ of certiorari. Petitioner did not file his federal habeas petition until August 30, 2005, with a Houston v. Lack delivery date of July 14, 2005. Therefore, an additional one hundred two (102) days of non-tolled time accrued after the disposition of his PCR[3]. If this time period is aggregated to the already exhausted time period of 197 days, the habeas petition was filed outside of the statute of limitations (1574 + 102=1676; 1676--365=1311 days late).

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d). In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d) commenced on April 24, 1996. Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period. This petition remained "pending" in state courts until January 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

---

[3] The Remittitur was issued on April 1, 2005, which was a Friday. Therefore, the time was counted from the following Monday, April 4, 2005.

Harris, 209 F.3d at 327.

Based on the above reasons, the undersigned finds that the Respondents' motion for summary judgment should be granted as the Petitioner's habeas corpus petition is barred by the statute of limitations.

Additionally, there is no evidence that warrants equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
> Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is

13

> only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Petitioner asserts that he thought his federal plea was going to resolve all of the charges against him in South Carolina state court. In his response, Petitioner argues that the petition is not time barred because "any question regarding my right to proceed [in a] timely manner was answered by the Honorable Judge Donald Beatty when [he] denied the States motion to dismiss." (Doc. #14, p. 1). Petitioner further asserts that he was assured by his defense counsel in Spartanburg, Billy Hahs, that he would not be returning to South Carolina.

The undersigned concludes that Petitioner has not presented (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time. See Pace, supra; Rouse, supra. Petitioner is correct that the PCR judge did dismiss Respondents' motion to dismiss his PCR application based on the statute of limitations concluding that there was sufficient evidence to conclude that Petitioner was lead to believe that he would not serve any of the sentence on his South Carolina State Court convictions until he received a letter dated January 18, 2000, from the SCDC informing him that he would be transferred to South Carolina. However, at the time the PCR judge denied the motion to dismiss, a copy of the plea transcript could not be located.

Subsequently, the plea transcript was located and a review of it reveals that when petitioner entered his plea in South Carolina on June 1, 1992, the trial judge specifically stated that "All of these sentences are to run concurrently with one another and to run concurrently with a sentence which you are now serving pursuant to a sentence by a federal district court." Petitioner responded, "correct." (Tr. 14-15). Thus, petitioner indicated that he understood that his state sentences would be concurrent to his federal time. There was also discussion about parole provisions and that his counsel had informed him that he could not guarantee that he would ever get out of prison on the state charges. During sentencing in state court, the trial judge specifically stated that his sentences would run concurrent to the federal time but that he would only be "given credit for the time that you have spent in jail here in Spartanburg with relation to these offenses." (PCR Tr. 38).

Furthermore, in reviewing the sentencing transcript from federal court on July 15, 1993, petitioner's counsel stated to the court as follows:

> I would also suggest to the Court in view of the fact that Mr. Jones is now facing a federal sentence of the underlying offense to this offense, not necessarily underlying but the one which he was incarcerated at, plus the sentence from South Carolina for life makes this, except for the perhaps educational value to others in a like position, any sentence other than very minimum sentence would really just be an exercise in – I don't want to use the word "vengeance," but it would be superfluous to Mr. Jones' situation as far as incarceration and punishment is concerned.

(Supp. App. 56-57).

Further, the federal sentencing judge questioned petitioner's counsel about the ten-year eligibility in the presentence report and petitioner's counsel stated that petitioner would have to serve at least a minimum of ten (10) years just to be eligible for early release in South Carolina. (PCR app. 56-57). Also, the federal prosecutor and the probation officer confirmed in open court that petitioner

would not necessarily be eligible to receive parole in ten years but would simply be eligible to apply for it. (Tr. 59). Thus, it was stated in front of petitioner several times that he had to complete ten years before being eligible for parole from his state charges.

Based on a review of the evidence, the undersigned finds petitioner's argument without merit and concludes that he is not entitled to equitable tolling. Therefore, it is recommended that the petition be dismissed as it is barred by the statute of limitations.

## VI.  CONCLUSION

As set out above, a review of the record indicates that the Petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that Respondents' motion for summary judgment (doc. #10) be GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 9, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

16

# Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
# &
# The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
