IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| James R. Jones, #222065, | ) | C.A. No. 4:05-2424-CMC-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **OPINION and ORDER** |
| | ) | |
| State of South Carolina; and Henry McMaster, | ) | |
| Attorney General of the State of South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the court on Petitioner's *pro se* petition for habeas corpus filed pursuant to 28 U.S.C. § 2254.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(c), DSC, this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings and a Report and Recommendation. On May 9, 2006, the Magistrate Judge issued a Report recommending Respondents' motion for summary judgment be granted and this matter be dismissed as untimely. The Magistrate Judge advised Petitioner of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if he failed to do so. Petitioner filed objections to the Report on May 25, 2006.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the

1

recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews the Report and Recommendation only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

On May 11, 1991, Petitioner and others burglarized a home in Duncan, South Carolina in an attempt to break into a safe which Petitioner and his accomplices believed contained a large amount of cash. Petitioner and his accomplices kidnapped one victim who was home at the time of the burglary, and eventually kidnapped four other family members as they arrived at the residence. Petitioner and his accomplices stole money and other valuables from the victims, and thereafter fled South Carolina.

On May 16, 1991, Petitioner was arrested on an outstanding probation violation warrant in Tennessee after local law enforcement searched his vehicle and found a paper sack containing $44,500.00 in cash.[1] On July 17, 1991, Petitioner and others were indicted by a federal grand jury sitting in the Middle District of Tennessee charging Petitioner with credit card fraud, interstate transportation of stolen property, and possession of stolen property.

After a jury trial, Petitioner was convicted on all counts. On May 11, 1992, Petitioner was sentenced to seventy-one months' imprisonment in federal prison. During the federal sentencing hearing, the federal district court judge specifically declined to enhance Petitioner's sentence based

---

[1]The facts relating to this arrest are outlined in *United States v. Jones*, 989 F.2d 501 (6th Cir. 1993) (per curiam) (unpublished).

2

upon restraint of the victims in South Carolina, as the court felt that "to use those facts to enhance [Petitioner's] punishment for carrying stolen property across the state line, which is what [Petitioner] was charged with and convicted of in this court, is troubling. . . . It might constitute double jeopardy and keep [Petitioner] from being appropriately punished by the South Carolina authorities . . . . I don't want to do anything to keep that from happening."[2] Supplemental Appendix to Respondents' Return (hereinafter "Supplemental Appx.") at 34-35 (Dkt. #11, filed Nov. 2, 2005).

In February 1992, Petitioner was indicted in Spartanburg County, South Carolina, on the charges stemming from the May 1991 burglary and kidnapping incidents. Petitioner was indicted on five counts of kidnapping, two counts of armed robbery, safecracking, and first degree burglary. Petitioner was also indicted in April 1992 for criminal conspiracy. On May 14, 1992, Petitioner returned to Spartanburg County to face these charges. On June 1, 1992, pursuant to a written plea agreement, Petitioner pled guilty to all charges except the safecracking charge.[3] Petitioner received a sentence of life imprisonment for the burglary conviction; thirty years' imprisonment for *each* of the kidnapping convictions; twenty-five years' imprisonment for *each* of the armed robbery convictions; and five years' imprisonment for the criminal conspiracy conviction. All these sentences were to be served concurrently with each other and concurrently with the federal sentence of imprisonment Petitioner was then serving (seventy-one months' imprisonment). On September 2, 1992, Petitioner pled guilty to the safecracking charge and was sentenced to life imprisonment on that conviction, which was also to be served concurrently with the sentences imposed June 1, 1992,

---

[2]The district judge did enhance Petitioner's federal sentence based upon, *inter alia*, the amount of stolen goods and Petitioner's use of a firearm.

[3]This plea and sentencing was held on a later date to ensure Petitioner's cooperation at a trial of a co-defendant.

and with the seventy-one month federal sentence.

At the June 1, 1992, plea and sentencing hearing Petitioner's lawyer stated: "I have explained to [Petitioner] that under our law he will be eligible [for parole] in ten years. I have also explained to him that I could make no representations or offer any forecast as to *when or if he will be paroled*, that that is between him and the parole board and *I cannot give him any indication on that*." Appendix to Respondents' Return 30 (Dkt. #11, filed Nov. 2, 2005) (emphasis added).

On July 15, 1993, Petitioner returned to federal court in Tennessee to face sentencing for convictions on two additional federal charges stemming from an attempted escape from federal custody.[4] Petitioner was sentenced to forty-eight additional months' federal imprisonment on these convictions, to be served *consecutively* to the federal sentence he was then serving. At the 1993 sentencing hearing, the federal district judge and Petitioner's counsel discussed the relationship between the federal sentence Petitioner was then serving (the seventy-one month sentence), the state sentences which were imposed in June and September, 1992, and the sentence the court would be imposing on the escape convictions:

> [Court]: [Counsel], the [federal] presentence report suggests that [Petitioner] may not have to serve but ten years additional for the South Carolina offense[s]. That is ten years after his completion of his time on the current federal sentence he is serving. Do you have a comment on that?
>
> [Counsel for Petitioner]: It is my understanding that that ten years is simply the first date that [Petitioner] would be allowed to ask to meet with the probation board there with regard to early release from his life sentence.
>
> [Court]: So that's the minimum it is at least ten?
>
> [Counsel]: That's it. That will be his first meeting. That will – that's my

---

[4]Petitioner contends the events relating to this conviction occurred *before* his first federal conviction.

4

understanding.  I haven't researched it, but I am pretty dead certain.

# # #

[Assistant United States Attorney]: [T]he life sentence that [Petitioner] has received is not a consecutive with the federal but it is concurrent to the federal so while he is serving his federal time, he is serving his state sentence and that he would be not necessarily eligible but *certainly eligible to apply for parole* after the service of ten years. . . .

Supplemental Appx. at 57, 59 (emphasis added).

As noted by the Magistrate Judge, this matter is controlled by the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA").  Under the AEDPA, the limitation period for § 2254 petitions runs from the latest of:

(A) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review;

(2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from making a motion by such State action;

(3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1).  Petitioner's state convictions became final in 1992.  Because the AEDPA was enacted after Petitioner's convictions became final, he had until April 24, 1997 to file a § 2254 petition.  *See Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

5

In a recent United States Supreme Court habeas decision, the Court did not directly address whether equitable tolling applied to the time limit for filing a § 2254 petition, but noted that "[g]enerally a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408 , 418 (2005) (citation omitted). The Fourth Circuit has held that, at least in theory, equitable tolling applies to AEDPA's filing deadline. *See Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). The Fourth Circuit cautioned, however, that equitable tolling should apply "in those rare circumstances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitation period and gross injustice would result." *Harris*, 209 F.3d at 330. Petitioner would "only [be] entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). Other courts addressing equitable tolling have found that "extraordinary circumstances" are *not*: having an inadequate law library, attorney error, claims of actual innocence, reliance on other inmates' advice, ignorance of the AEDPA filing deadline, or even (in some instances) petitioner illness.[5]

Petitioner has presented no circumstances which would warrant the application of equitable tolling to his § 2254 petition. Petitioner pleads no extraordinary circumstance beyond his control which made it impossible for him to timely file his § 2254, nor has he shown due diligence in pursuing his rights between the time his convictions became final and when he actually filed his state PCR application. The state PCR application was filed almost eight years after Petitioner's state

---

[5]An example of an "extraordinary circumstance" was found to exist by the Ninth Circuit in *Miles v. Prunty*, 187 F.3d 1104 (9th Cir. 1999), where an inmate had relied on prison officials to cut a check and mail his § 2254 petition to the district court.

convictions became final. Even assuming Petitioner somehow misunderstood the relationship between the federal and state sentences in June 1992, the court notes that at the very least, the 1993 proceedings in the Middle District of Tennessee put Petitioner on notice that he would be returned to South Carolina authorities at the completion of his federal sentences.[6]

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and the Objections of the Petitioner, the court agrees with the conclusions of the Magistrate Judge. Accordingly, the court adopts and incorporates the Report and Recommendation by reference in this Order. Petitioner's § 2254 petition is untimely.

Respondents' motion for summary judgment is granted, and this petition is dismissed as untimely.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 30, 2006

---

[6]At the time Petitioner was sentenced on the state charges on June 1, 1992, he was only serving a seventy-one month federal sentence. It wasn't until he was sentenced on July 15, 1993, that he received an additional forty-eight months' federal incarceration, thereby increasing his overall period of federal imprisonment to 119 months, one month shy of ten years' imprisonment.